### William Matthews vs. Mercy Hall.

That a note payable to A. B. or bearer, may be sued in the name of a *bona fide* bearer, without indorsement.

THIS was an action of *Assumpsit*, in  { Windsor, Feb. 1828.
which the plaintiff declared against the } *Matthews* vs. *Hall.*
defendant, for that the defendant at —— on the 1st day of September, 1825, gave a note for 53 dollars to one *Mark Richards,* and payable to him or bearer; and that said *Richards* assigned and delivered over said note to the plaintiff: which note the defendant has neglected to pay.

To this declaration the defendant demurred, and the plaintiff joined in demurrer.

*Mr. Collamer, in support of the demurrer.* The question in this case is, can an action be maintained in his own name, by a person who is the "*bearer*" of a note payable to A, or bearer, without the note being indorsed? This could not be done at common law, though perhaps might be on indorsement; yet that at times has been doubted.—1 *Ld. Ray,* 180, *Nicholson* vs. *Sedgwick.* It could not be done by the *law merchant,* even by indorsement; and hence arose the *statute of Anne.* By this statute the action may be brought by any one to whom the note is indorsed or *transferred;* and hence it has been holden, under that statute, that to a *bona fide* bearer it has been *transferred,* and all the declarations are so framed.—3 *Chit. Pl.* 15.—It has sometimes been argued that by the very terms of the note, the bearer may maintain an action in his own name. This would, if true, apply to notes or bonds, or any contract, even for specific property, with equal force, and cannot be supported. Our statute in terms includes notes to bearer, and gives action only to indorsee.— *Statute,* 144.

Having shown the action cannot be maintained by common law, or law merchant, nor by our statute, we come to the ground on which the case was decided by the court below, *i.e.* that it could be maintained by "*the common law of Vermont.*" The case, by this view of it, though involving but a small sum of money, becomes at once of immense importance, and embraces no less than this question, is there in *Vermont,* a law-making power, distinct from legislation? Can the *will* of the people, *which is law* in regularly constituted governments, be expressed in any way of which courts are to take cognizance, but by their constitutional organ, the legislature? Let the ingenuity of counsel, and the

Windsor, Feb. 1828.
*Matthews* vs. *Hall.*

learning of Judges be exercised to equivocate and disguise the point, it is still the same ; and the extent of judicial legislation is now to be tested.—— It is equally vain for the judiciary to shrink behind the popular will, general consent, or any such evasion, for the only mode of expressing public sentiment, so as to constitute law, in this country, is "*constitutional legislative enactment.*"

Having shewn that by the common law of *England* this action cannot be maintained, it will not be necessary to enquire under what modifications that code was here adopted, as under none of its forms could this cause be sustained. Can there be a common law here, on this or any subject, distinct from the common law of *England*? The origin and authority of all common law resolves itself into the will or consent of the people. This involves one of two suppositions, that is, either first, that this will has been at some period, long since, regularly, by representatives expressed, and the record of such statute is now lost ; or secondly, that a semi-barbarous state of society has existed, in which the will of the people was expressed, and is to be sustained in the absence of regular legislation. Neither of these can apply to this state. If a practice could here obtain, so as eventually to be ratified by our highest tribunals, as law, it would become important to inquire, at what stage or period of its existence the practice became law. For instance, on this subject was it in its original concoction? was it when the first blundering pettifogger first conceived the *Statute of Anne* applied here, and made a declaration in favor of a *bearer*? was it when a justice of the peace gave judgment by default on such a suit? or was it when some of our thirteen former county courts have added the weight of their example to the practice, that it became law?

Another question of some importance arises in this connexion. Can there be a course of regular legislation, and another covert and irresponsible law-making power, creating cotemporaneously, different laws on the same subject?—and our statute includes *this* subject. It may be important to inquire, if this law is to be adopted, what are to be its modifications and contingencies? Is the bearer to hold his right, subject to those defences and offsets, which our statute imposes on indorsees, or is it to be subject only

to those which bearers suffer under the <span>⎰ </span>
*Stat. of Anne*; as it is not indebted to <span>⎱    *Matthews vs. Hall.*</span>
our statute for existence. It would seem that the latter would
be the case; and if so, the provisions of our statute, intended to
restrict the general currency of private paper, will be easily eva-
ded. Again, what shall be the relative rights and responsibil-
ities of the parties? what notices are to be given, and what liabil-
ities incurred? It is the introduction of a new principle, fruit-
ful of consequences and difficulties, and requires in its adoption
and perfection, a stretch of judicial temerity deeply to be deplored.

*Mr. Webber, contra.*—The objection raised by the defend-
ant is, that the bearer of a note, payable to one or bearer, cannot
sustain an action thereon in his own name as bearer. The first
answer to this objection is, that anterior to the *statute of Anne*,
the bearer of a note, payable to one or bearer, could recover in his
own name in *indebitatus assumpsit*, for money had & received to his
use. Reference is made to the *statute of Anne* for all the rights of
subsequent holders of promissory notes. I confine my remarks
on this statute, as I find it recited in *Chitty on Bills*, 334-7. This
statute, after reciting that it had been held, &c. speaking of notes
payable to order only, enacts, that all notes for the payment
of any sum of money, mentioned in such notes, to any person or
his order, or unto bearer, shall be construed to be, by virtue there-
of, due, and payable to whom the same is made payable. That
the person, to whom such sum of money is, or shall be by such note,
made payable, shall and may maintain an action for the same in
such manner as he might do on an inland bill—that such notes as
are payable to some person or order may be endorsed, and that
the endorsee of such note, as is payable to some person or his or-
der, may have the same rights as the endorsee of an inland
bill. All that notes, payable to one or bearer, derive from
this statute, is, that the one to whom the money is therein specified
to be paid, may declare as on an inland bill. This barely re-
moves the objection of *Ld. Holt*, in *Clark* vs. *Martin*, 2 *Ld.*
*Ray.* 758, referred to in *Chitty on Bills*, 333. His objection was,
that declaring as on an instrument was setting up a new kind

Windsor, Feb. 1828. } of specialty.The construction of these notes,
*Matthews* vs. *Hall.* } that is, to whom the same is made payable,
this statute does not approach, but leaves to the common law.    To
whom is such note made payable? In *Grant* vs.*Vaughan*, 3 *Burr.*
1516, a bill or check came up payable to "*Ship Fortune*, or bear-
er."This presented to the court the inquiry,how far the bearer of a
note, was a party to the contract ?    And for this purpose the court
went back anterior to the *Stat. of Anne*,and there cited indiscrim-
inately cases on notes and bills, where the bearer had
declared as such, or where his right to, or control over, such bill or
note, was recognized.    The court in this case determined that
the bearer of such a note may sustain an action thereon in his
own name.    The case of *Nicholson* vs. *Seldnith*, 3 *Salk.* 67,
which is against us, the court, in the case from *Burrow*,overruled,
as determined on reasons wholly untenable, and the court here
say, that before the statute,*Ld. Holt* thought *indebitatus assump-
sit* for money had and received, would lie in favor of the bearer.
The word bearer is *descriptio personœ*, and one may take by this
name as well as any other.(*Same authority.*)This doctrine in*Burr.*
is confirmed in 3 *T. R.*182, *Tatlock* vs. *Harris* ; and *Ld.Kenyon*
here says, that in so doing, he does not intend to infringe on
the rule of law, that a *chose in action* cannot be transferred.
Had it not been for the opposition of *Ld. Holt*, these notes,from
the nature of the contract, would have fallen into the same rule of
construction applicable to inland bills.—*Chit. on bills* 333-4.—
This note descends to us from the common law, on which the
bearer can recover in a general count: we have adopted the Eng-
lish practice of declaring under the *statute of Anne*—1 *Chip. R.*
343,*Brooks* vs.*Page*. But whence soever it is derived in*England*,
these notes are negotiable here, from long usage. It is not ne-
cessary that a custom, to be law, should have existed anterior to
*Edward the Confessor*. This is illustrated in *England* by the
customs of merchants. They are of modern origin,yet it is settled
that they are a part of the common law; and this was a result of a
construction which had in contemplation the rights they intended
to create. Bills of Exchange, at the time the law merchant was
adopted, had been long in use, and rights had been acquired un-
der them by others than those who were parties in fact to the ma-
king of the bill ; and the bill was made in reference to those

rights,—rights unknown in the old *chose in action*, of course, the same rule of construction could not apply for every purpose in both cases.

When the question rose on a bill between those where there was a privity in contract, in fact, the same rule would hold; but when it rose between a prior and remote holder, a rule more enlarged was necessary. This leaves unaffected the rule, that a *chose in action* cannot be transferred; for that rule contemplated contracts which had nothing to do with what constitutes the striking peculiarity of bills of exchange. Promissory notes have all the material words of negotiability used in a bill, and as before remarked, would have fallen within the same rule of construction, had it not been for the opposition of *Ld. Holt.—Chit. on Bills*, 533–4.—We have always made promissory notes for the same purposes, and created the same rights, and had the same rights in contemplation as in *England*. We have adopted the English forms of declaring, established under their statute; and this form of contract is not confined to individual cases, but pervades the whole community. These rights should be protected, as they are not opposed either to positive law or public policy. And that notes are negotiable with us, is a fact our statute in the outset counts upon. If the first sentence of our statute meant any thing more than to make a distinct inducement for its two provisions, it is affirmance of the common law. From the general phraseology of this statute, and the character of its provisions, it would seem that all the legislature meant by the word "endorsee," was to deprive the holders of promissory notes from negotiability. The mode of transfer is governed by the legal operation of the instrument.—*Chit. on Bills*, 146.—Delivering a note payable to bearer, is tantamount to an endorsement, and to say that an endorsement is necessary to negotiate such a note, would be absurd.—3 *Burr.* 1529.—The term endorsement in its largest sense, means any entry on the back of a written instrument. The practical definition of the word is, that act that transfers the bill or note from one hand to another; and he who receives it, receives it as an endorsee for all the practical purposes of an endorsement. There can be no good reason why our legislature should force an actual endorsement where it is not necesssary. But if an endorsement in fact is necessary, then this case is without the statute;

RR

Windsor, Feb. 1828.  } and is, in case bills and notes were negotia-

*Matthews* vs. *Hall.*  } ble here, as at common law, more favored. This note is clearly within the spirit of our statute; and the stat- ute should be so construed as to include it.

HUTCHINSON J. delivered the opinion of the court.   This is an action upon a note, signed by the defendant, and payable to one *Mark Richards*, or bearer.   The declaration alleges the execu- ting of the note by the defendant; and then alleges that said *Rich- ards* assigned over, and delivered said note, to the plaintiff; of which the defendant had notice, &c.   To this declaration the defendant has demurred, and the plaintiff has joined in demurrer. Upon the argument of the demurrer before this court, the only exception taken to the declaration is, that it is not therein averred that the assignment by *Richards* to the plaintiff of the note in question was made in writing, by endorsement on the back of said note.   There being, in fact, no such averment in the declar- ation, the exception is well taken, unless by law the plaintiff can maintain the action by averring himself to be the *bona fide* bearer of the note without any endorsement thereof.   Therefore, the on- ly question to be decided is, whether the law be so, or not?

It is urged by the defendant's counsel, that the statute of this state, on page 144, only gives the right of action to the endorsee of a note like the present.   This is correct, and the plaintiff can derive no aid from that statute.   On the other hand, if the plain- tiff otherwise could maintain the action, his right of action is not taken away by the statute; the whole object of the statute being to preserve all the offsets and equitable defences of the signer of the note, before notice of an assignment thereof.   It is further urged that this action cannot be maintained by the common law, or the law merchant, or by any practice in this state amounting to com- mon law here.   It is therefore necessary that the court should ad- vert to the nature of this contract, and to the common law, and the practice of this state with regard to such contracts.

With regard to the nature of the contract, it is an express written promise to pay the sum mentioned to *Mark Richards*, or bearer; and acknowledging a value received for such promise.   Now, if this were a case entirely new, and the question never before agi- tated, and, of course, there was no common law about it, it would

seem natural, in the application of a-    Windsor, Feb. 1828.
nalagous principles, to say, the words to    *Matthews* vs. *Hall.*
*R. M.* or bearer, are used as the description of the persons
who are severally promisees of the note.    If the note were
payable to A. B. or C. D. it would seem difficult to assign any
good reason,why either A. B. or C. D. should not maintain an ac-
tion upon neglect of payment.    The substituting *the bearer* in-
stead of C. D. would seem to create a direct promise in the sign-
er to pay to such person as should be the bearer.This would seem,
by the force of the terms, to give a right of action to the plaintiff,
without any endorsment,upon his becoming the *bona fide* bearer of
the note.    If the question were thus new, the court would adopt
these principles and support the action.    Nevertheless, as such
contracts are not new, but have been made the subjects of judicial
investigation, if the law concerning them is otherwise settled,we
must abide by the law; if not otherwise settled, or if settled in fa-
vor of the plaintiff, the declaration must be supported.

Those who possess the first volume of *Cranch's Reports,* will
there find an appendix, giving a more detailed history of the dis-
putes upon this subject, than it would be proper for the court now
to give.    And yet, the litigation has not been exclusively upon
notes, payable like the present, but more extensively upon the
question,whether notes, however framed, were negotiable,accor-
ding to the custom of merchants, adopted as the common law up-
on the subject of bills of exchange?    And by the law merchant,
bills of exchange, foreign bills by that law merely, and inland bills
by that law and by the statute 9&10 *Will.III.* were both negotia-
ble, and might be declared upon as such bills of exchange, with-
out alleging any consideration.    And whatever contract did not
come within the custom of merchants, if sued,must be declared up-
on with a consideration particularly set up in the declaration.
And this mode of declaring upon bills of exchange was a feature
in the law concerning them, no less prominent and distinguishing,
than that which relates to their negotiability.    This fully appears
by the reports of early decisions,and in the books of entries of ear-
ly precedents, and the earliest forms,that omit to set forth the con-
sideration on which a note was given, set forth in its stead a cus-
tom, that when a man makes such a contract, he is liable
so and so, and then set up a contract that comes within

Windsor, Feb. 1828.

*Matthews* vs. *Hall.*

the custom, and say, in consideration, &c. the defendant became liable to pay, &c. and promised, &c.   In the case of *Hodges* vs. *Steward,* reported in *Comb,* 204.—*Salk.* 125.—12 *Mod.* 36, and *Holt,* 115, the custom was laid in *London,*that where a bill is made payable to A or bearer,it must be paid to the endorsee. This custom was adjudged bad on account of repugnancy, *Holt, Chief Justice,* saying another person,and not the endorsee,might be the bearer.   And in *Salkeld's report* of the case, it is said, a difference was taken between a bill payable to bearer, or to order; for a bill payable to J. S. or bearer, is not assignable by the contract, so as to enable the endorsee to bring an action, because there is no such authority given to the party by the first contract.   But, when a bill is payable to J. S. or order, there an express power is given to the party to assign; and the endorsee may maintain an action.   This was in 5 *William and Mary.*

*Hinton's* case, reported in 2 *Show.* 235, was ten years earlier. There the bill was payable to J. S. or bearer ; and the plaintiff brought his action as bearer, and it was ruled by *Lord Pemberton,* that the plaintiff must entitle himself to it on a valuable consideration; though among Bankers, they never make endorsements in such cases ; for (assigning a reason why he must intitle himself on valuable consideration,) if he come to be bearer by casualty, or knavery, he shall not have the benefit of it.

It is worthy of notice,that in most of the ancient cases, bill and note are used as synonymous terms, when the reference is to an inland bill.   And, in addition to what is above said by *Pemberton,* that bankers never make endorsements in such cases, I cannot find, nor do I recollect,a case of a note or bill payable to one, or bearer, in which the holder sued declaring as endorsee.   All that I find, or have known, have been sued by the holder as bearer.— This may be owing to the circumstance, that the law has been considered, as stated in the above case of *Hodges* vs. *Steward,* that the contract confers no power to endorse.   Therefore, an endorsement might be of no avail, only as against the endorsor ; whereas the holder, becoming *bona fide* bearer, becomes payee, by the terms of the contract, without endorsement.

In the year 1692, in *King's Bench,* in the suit of *Williams* vs.

*Williams*, second endorsee against the first ⎰ Windsor, Feb. 1828.
endorsor, the declaration throughout count- ⎱ *Matthews* vs. *Hall.*
ed upon the custom of merchants, and other persons in the
realm of *England*, and not in *London*, or other place, which
would give it the name of local custom. The plaintiff had
judgment in the *King's Bench*; and a writ of error was brought
in the *Exchequer Chamber*; and the judgment was affirmed.
And the only error assigned was, that the plaintiff counted upon
a custom in the realm of *England*, which, if it existed, was
the common law. The decisions in the case, therefore, went
upon the ground, that the custom in the realm of *England*, or, in
other words, the common law of *England*, was applicable to
notes endorsed, the same as to foreign bills of exchange.

The case of *Nicholson* vs. *Sedgwick*, reported in 1 *Ld. Ray.*
180, and in 3 *Salk.* 67, was just like the present: and, after a
verdict for the plaintiff, judgment was arrested because the action
should have been brought in the name of the original payee. And
in 3 *Salk.* 67, *Jordan* vs. *Barlow*, it is said to have been ruled
that a bill payable to W. R. or order, is within the custom of mer-
chants, and may be negotiated and assigned by custom, and the
contract of the parties; and an action may be grounded upon it,
though it be not a specialty; but if it be made payable to W. R.
or bearer, it is not within the custom of merchants. And, where
plaintiff declared that the defendant made such a bill, according
to the custom of merchants, and had not paid it, the declaration
was adjudged ill, because the custom was too general. It does
not appear by the report whether the plaintiff, in the case of bear-
er, sued as bearer or as endorsee. If as bearer, the case above of
*Nicholson* vs. *Sedgwick*, might govern the decision. If as en-
dorsee, it would be founded on the decision of the above case of
*Hodges* vs. *Steward.*

The case of *Clark* vs. *Martin*, in *King's Bench*, in 1 *Anne*, re-
ported in 2 *Ld.Ray.* 757, & 1 *Salk.* 129, was upon several promises,
and, among others, one was *indebitatus assumpsit*, and one upon a
promissory note, payable to the plaintiff or order, and declared up-
on as a bill of exchange, according to the custom of merchants.
Verdict for the plaintiff, with entire damages; and motion in ar-
rest, because such a note was not within the custom of

merchants. But plaintiff should declare in *indebitatus assumpsit* for money lent, and give his note in evidence. *Ld. Holt*, says the reporter, was *totis viribus* opposed to the action, and said that this could not be a bill of Exchange, and after one or two terms, the judgment was arrested by the whole court. That is, though the original payee of the note was plaintiff in the action, yet the declaration was bad, because it declared upon the note, according to the custom of merchants, instead of declaring as upon a promise, setting forth the considerarion of that promise; or else, giving the note in evidence upon the general money counts. Three or four decisions succeeded this, all in the same strain of excluding from promissory notes all appendages of the law merchant.

These decisions, on account of which *Ld. Holt* has been often spoken of for his obstinacy and peevishness, gave such dissatisfaction, that it produced the *Stat. of Anne.* The preamble of the act is, whereas, it hath been held, &c. reciting the very points of decision, which had thus stripped promissory notes of all the appendages of bills of exchange, and enacted, that such notes should be taken, &c. and various persons might maintain actions upon them, as upon inland bills of exchange, made or drawn according to the custom of merchants. This statute creates, or rather restores, the similarity between notes, and inland bills of exchange, both with regard to their negotiability, and the mode of declaring, without naming the consideration. After this statute, however, the declarations, in raising the liability and promise, instead of saying by the custom, as formerly, say, by the force of the statute. And, even the greatness of *Ld. Holt* is scarcely more kept in remembrance by the allusions of judges and reporters in later times, than that unreasonable opposition of his to the application of the law merchant to promissory notes, which produced that statute. It appears strange that so great a judge, as he certainly was, should permit that to proceed indirectly to establish a right, which he would not suffer to proceed directly—That he should consider the note sufficiently *prima facie* evidence to entitle the plaintiff to recover on a general count, when he would not support a count drawn upon the same note, and alledging with legal certainty all the facts which could be proved by reading the note.

During all these discussions, there ⎰ Windsor, Feb. 1828.

seems no suggestion but that a note, ⎱ *Matthews* vs. *Hall.*
payable to the bearer only, is a good and binding note to
recover upon, in some form of action or other. Nor does it
appear to be doubted at all, at this day, but that upon such a note
an action may be maintained in the name of the holder, whether
he were the person from whom the consideration first passed,
or any after *bona fide* bearer. And it seems difficult to conceive
any possible reason why there ever should be any distinction be-
tween the rights of a *bona fide* bearer of a note, by purchase, with-
out indorsement, whether that note be payable to A. B. or bearer,
or to bearer only. The *statute of Anne*, if correctly recited in
the book I have, gives no action whatever to the bearer of such
note, unless by reference to inland bills of exchange. They are
named in that clause of the statute which enacts that notes shall
be construed to be payable to the person to whom they purport
to be made payable. But they are not named at all in that clause
which creates the negotiability. That clause enacts that every
such note, payable to any person or his order, shall be assignable
or endorsable over, in the same manner as inland bills of exchange
are, or may be, according to the custom of merchants. And the
payee may maintain an action against the maker, and the endorsee
against the maker, or any prior endorsor, in like manner as in cases
of inland bills of exchange. As, therefore, such bills paya-
ble to bearer, or to A. B. or bearer, might be sued without this
statute, so might notes thus payable be sued by virtue of the stat-
ate.

But few disputed cases upon such notes have been reported
since that statute. The case cited from the 3 *Burr.* 1516,
*Grant* vs. *Vaughn*, is an authority strong in point in support of
this declaration, both in its direct application, and in its disposal
of such former decisions as militate against it. That was brought
upon a bill payable to *ship Fortune*, or bearer. It is said, and
correctly too, that no action could be maintained at all upon this
contract, unless in favor of some person, as bearer, because, *ship
Fortune* could be neither plaintiff nor assignor. Hence the man to
whom delivered, or the first bearer, holds as he would if the words
"*ship Fortune or*" had been omitted in the bill. This reasoning

Windsor, Feb. 1828. ⎰ is good in support of the action upon the
Matthews vs. Hall. ⎱ bill in favor of the person to whom it was
first delivered. But this reasoning does not at all affect the
parallel between that case and this : for *Grant*, the plaintiff in
that action, was not the original bearer of the bill. It was sent
to one *Bicknell* who lost it ; and it was found and sold by the
finder. And *Grant*, after due caution, became the *bona fide*
purchaser, and the court decided that he should recover of
the maker, he having sued as bearer. *Bicknell* was the original
bearer. *Grant* was bearer after him, and recovered.—In the
case before the court, *Mark Richards* was original payee,
and first bearer, and *Matthews* is the second bearer, and he must
recover, if that case is law here.

But, it is objected that the case in *Burrow* is of no force here,
because founded upon the *statute of Anne*, which was never adop-
ted here. On reference to the case, we find that *Lord Mansfield*
assigns his reasons in full, as his custom was, and begins with say-
ing, that he was not satisfied at the trial with the reason of those
cases cited by the defendant ; and proceeds to deny the correct-
ness of those several decisions, and cites several cases in point for
the plaintiff, not here named, but which can there be seen, and
adds, that great force arises from the act of Parliament, 3*d and* 4*th
of Anne*. Before he alludes to the statute at all, he says, among
other things, " It appears in the books that these notes are by law
negotiable ; and that the bearer of them may maintain an action
as bearer, where he can entitle himself to them on a valuable con-
sideration—and it would be absurd to endorse such bills as are
made payable to bearer.

*Justice Wilmot* expressly says, "this note is negotiable, and may
be sued in the name of the bearer. Bearer is a description of the
person, and a person may take by that description, as well as any
other. It is a contract to pay the bearer, or to the person to whom
he shall deliver it." And he adds that *Hinton's* case, before cited,
is decisive of the one under consideration. And, it will be re-
membered, that *Hinton's* case was decided long before the *statute
of Anne*, and he adds : " were this a question antecedent to that
act, I should stand by that first case of *Hinton*, rather than the
latter ones cited, which differ from it." The court were unani-

mous for the plaintiff ; and] their reason- ⎧ Windsor, Feb. 1828.
ings show conclusively that their decision ⎨ *Matthews.* vs. *Hall.*
would have been the same had the statute been out of the question. This case, from the investigation it evinces, should command more respect than those shortly reported cases, which are not very consistent with each other,and which evince none of that expanded investigation by which *Lord Mansfield* extricated the common law from so many difficulties that were technical, but without substance or use. We consider this case as settling what the common law was upon this subject at that period, and we discover no case decided at a later period which militates at all against it. And there is no doubt but that decision has ever since been considered law in *England.* But it is possible that more disputes would have arisen upon the subject,if the statute had been repealed ; though it is not very probable, for that decision, treated as common law, must have been as convenient and useful in practice, as the same law when applied to foreign bills of exchange. But were we compelled to doubt whether the common law of England, without the *statute of Anne*, would support this action, the doctrine it embraces is so just, and so convenient, we should be unwilling to reject it, unless we find it clearly opposed to the common law. It is very just that persons should abide by *their contracts* understandingly made,when upon good consideration ; and it is a rational construction of this instrument,that the defendant promised to pay to the person who should be the *bona fide* holder or bearer of the same.

It is now about fifty years since this state was established, with an organized judiciary in some form or other ; and during all, or nearly all, that time,we have had a statute adopting the common law of *England*,so far as applicable to the circumstances of this state.

There was a short period,during which those statutes of *England*, which were in affirmance of the common law, were adopted by our statute. There was anciently, and for a short time, I believe one year only, a statute of this state in force,destroying all negotiability of notes. During all this time,it has been necessary for courts to adopt,either by express decisions, or tacit practice, such of the common law as they deemed applicable here. As the

ss

Windsor, Feb. 1828. ⎫ early decisions of our courts were not re-
⸺⸺⸺ ⎬
*Matthews* vs. *Hall.* ⎭ ported, we must infer their decisions from
what we can be sure has been treated as law, time out of mind,
and not the subject of litigation.

In the first place, then, that part of the ancient common law
which required the particular consideration on which a note was
given, to be set up in a declaration upon that note, was never a-
dopted here.    The allegation of *for value received* has always
been considered sufficient in a declaration upon note.

In the next place, declarations upon notes have never referred
either to the law merchant,or the *statute of Anne,* to raise any li-
ability in the promisor.

In the third place, in this part of the state, and *Judge Prentiss*
says the same of his extensive practice, we have seldom seen or
heard of a declaration upon note that alleged an express promise,
and afterwards proceeded to raise a promise in law.    The rea-
son for raising the promise in law in *England,* was to bring in the
aid of the law merchant, or the statute, to create the liability of
the defendant.    That becomes a useless form when preceded by
an express promise of binding force upon the defendant.

During all this time, as before observed, we have never heard
of a declaration upon a note, payable like the present, in which the
plaintiff declared as endorsee : nor has there ever been any dis-
pute in this part of the state, and probably few in any part, but that
actions like this might be maintained in the name of the bearer.
*Judge Doolittle* informed me of a case the Supreme Court had
then just decided in *Bennington county,* about seven or eight
years ago, in which they supported an action in favor of the bear-
er without endorsement.    But it is not recollected whether the
note was payable to A B or bearer, or to bearer only ; but it was
undoubtedly in favor of a bearer, who became such by purchase.
So was the information as now recollected.    These actions in favour
of bearer have been frequent, and have generally passed without
objection.    This shows the general understanding that such was
the law of the state.    In 1 *Mason's Rep.* 251, *Bullard* vs. *Bell,*
the Circuit Court decided that they had jurisdiction of an action
on a bill payable to A B or bearer, and not endorsed, because it
was a direct promise to pay to bearer, the same as if it had been
payable to the bearer only.

· This state has so long existed, that we { Windsor, Feb. 1828.
may well treat, as common law of this state, } *Matthews* vs. *Hall.*
that which has always been considered law here. Many years
since, the Supreme Court of the *United States* decided, in a
case carried up from this state, that two or more tenants in com-
mon might join, as plaintiffs, in an action of ejectment. This is
contrary to the common law of *England.* And this decision was
founded upon the long and uniform practice of the courts in *Ver-
mont.* See the case of *J. B. and Elias Hicks,* vs. *Wm. Rogers,*
reported in *Cranch.*

Upon every view of this case, the decision of the majority of the
court is, that the declaration is sufficient, and the plaintiff have
judgment.

*Chief Justice* SKINNER, expressed a dissenting opinion.