## SOLOMON DOWNER v. ALVAN TUCKER.

### *Promissory note.*

M. sold a farm to T. and received therefor the latter's note, payable to "M. or bearer, on demand, after a lease shall be given up from M. to O., dated July 28, 1851." This lease was a subsisting incumbrance upon the farm, and it was the expectation of the parties that it was to be given up within a short time, and it was, in fact, surrendered within a few days after the sale. M. was indebted to the plaintiff, who was present at the execution of the note, and it was understood by all the parties that the note was to go to him, and M. delivered it to him on the same day. *Held*, in the absence of any proof as to the length of time the lease was to run, that the note was payable upon a contingency and was therefore not negotiable, and that an action could not be maintained upon it against T. in the name of the plaintiff.

ASSUMPSIT upon a promissory note dated April 18, 1853, signed by the defendant, and payable to "Levi H. Marsh, or bearer, on demand, for value received, after a lease shall be given up from Levi H. Marsh to Olive Ann Marsh, dated July 28, 1851." The case was tried by the court, at the December Term, 1857, of the Windsor County Court,—REDFIELD, Ch. J., presiding.

It appeared that the note was given as a part of the price of a farm sold by Marsh to the defendant, and that the lease referred to was outstanding upon the farm in the hands of the lessee, Olive Ann Marsh. It did not appear how long the lease was to run or what was its tenor. The court, from the facts above stated, and the terms of the note, regarded it as the legal construction of the contract that the lease should be given up before the note became obligatory upon the defendant, and that it was the probable expectation of the parties that it should be done immediately, or in a reasonable time to accomplish it. It appeared that the lease was in fact surrendered in two or three days after the date of the note.

It further appeared that at the time the defendant executed the note he knew that Marsh intended it for the plaintiff to pay him what Marsh owed him, and that it was taken expressly with that view, and in the plaintiff's presence. But it was delivered to Marsh, and was not to become the plaintiff's property without Marsh's consent, and Marsh did deliver it to the plaintiff the same day. *

* See the statement of the case of *Downer* v. *Marsh and Tree.*, 28 Vt. 558.

Downer *v.* Tucker.

Upon these facts the court gave judgment for the defendant, to which the plaintiff excepted.

*Washburn & Marsh,* for the plaintiff.

1. The note was in effect given *to the plaintiff* in the first instance. The time was limited in the minds of the parties in which the note would become obligatory; a few days at farthest was the time contemplated, and it in fact did become obligatory in two or three days after its date, and the action was not commenced till after the lease was surrendered. There was, therefore, in truth, no contingency, at least, none such as can effect the collection of the note by the plaintiff. *Cota* v. *Buck,* 7 Metcalf 589; *Pinkham* v. *Macy,* 9 Metcalf 174; *Stevens* v. *Blunt,* 7 Mass. 240; Chitty on Bills 527 and cases there cited; *Rut. and Bur. R. R. Co.* v. *Cole,* 24 Vt. 33; *Arlington* v. *Hinds,* 1 D. Ch. 431.

2. But if it were payable upon a contingency originally, it had become absolute previous to the commencement of this suit; it is in form a negotiable promissory note, and, under the decisions in this State, which in most respects have disregarded the rules which have arisen under the Stat. 3 and 4 Anne, governing actions upon notes of this character, this action should be sustained. This note does not vary in principle from a note payable in specific articles, after maturity. *Brooks* v. *Page,* 1 D. Chip. 340; *Dewey* v. *Washburn,* 12 Vt. 580; *Dennison* v. *Tyson,* 17 Vt. 553; *Miner* v. *Robinson,* 1 D. Chip. 392; *Aldis* v. *Johnson,* 1 Vt. 136; *Eastman* v. *Potter,* 4 Vt. 313; *Hodges* v. *Eastman,* 12 Vt. 358; *Moore* v. *Wright,* 1 Vt. 57; *Bucklin* v. *Ward,* 7 Vt. 195.

3. But this note is made payable to Marsh " *or bearer,*" and it is sued by the plaintiff as bearer. The right to sustain the action in this form exists independent of the Stat. of Anne, and is not controlled by it or the decisions under it. *Matthews* v. *Hall,* 1 Vt. 316; *Evarts* v. *Gove,* 10 Vt. 161; *Parker* v. *Kendall,* 3 Vt. 540; *Potter* v. *Bartlett,* 6 Vt. 248; *Hodges* v. *Steward,* Salk. 125. That statute controls the right to sue an indorsed note in the name of the indorsee. A note payable to one, or *bearer,* may indeed be *indorsed,* and when so indorsed, the question would arise, which is decided in *Collins* v. *Lincoln,* 11 Vt. 268, but that question does not arise here.

*Converse & French*, for the defendant.

The giving up of the lease was a *contingency* upon which the payment of the note depended. The lease may have been a perpetual one. This contingency prevents the note from being negotiable. Story on Promissory Notes, secs. 22–25 and cases there cited; Chitty on Bills 136, 527; 1 Am. Lead. Cases 315; *Cota* v. *Buck*, 7 Met. 588; *Coolidge* v. *Ruggles*, 15 Mass. 387; *De Forest* v. *Tracy*, 6 Conn. 155; *Downer* v. *Quimby's Estate*, (supreme court, Orange County, 1852,) not reported.

The fact that the contingency afterwards happens, upon which the note was to become absolute, does not change the character of the instrument. Story on Prom. Notes, sec. 22; *Hill* v. *Hosford*, 2 Bos. & Pul. 413.

PoLAND, J. The defendant insists that the note on which this action is founded is not a negotiable note, so as to authorize the plaintiff to maintain an action upon it in his own name, though the note is in terms made payable to Levi H. Marsh or bearer. This is claimed upon the ground that the note is not a promise to pay absolutely, but that it is made payable " on demand after a lease shall be given up from Levi H. Marsh to Olive Ann Marsh," and that this is such a contingency as may never happen, and so the note may never become payable by its own terms. The law upon this subject is perhaps as clearly stated by SHAW, Ch. J., in *Cota* v. *Buck*, 7 Met. 588, as in any case or by any law writer. "The true test of the negotiability of a note seems to be, whether the undertaking of the promissor is to pay the amount at all events at some time which must certainly come, and not out of a particular fund, or upon a contingent event."

The plaintiff does not claim that any action could be maintained on this note by him, or by the payee until this condition expressed in the note should be complied with, but he insists that the term lease, as used in the note, implies only a lease for some limited term, and as that would at some time come to an end by its own terms, that therefore the condition or event was sure to happen, so that the only contingency was *when* the note would become due, and not whether it would ever be due at all. The exceptions state that it did not appear how long the lease ran or

what was its tenor. It might have been a lease for a term of years, long or short, or a lease for life, or a perpetual or durable lease for all time, and either of these would come equally within the terms used in the note.

We are therefore of opinion that upon the face of this note it does not appear that the contingency or event upon which this note was made payable, was one which must certainly happen, so as to make it an absolute promise to pay, and the case does not show that this difficulty was at all obviated by the proof at the trial.

If it had been shown that the lease mentioned in the note was one which had but a short period to run, so that by its terms the farm deeded to the·defendant would then be released from it, and the title made clear to the defendant, for one I should consider that it came fairly within the spirit of the contract and intention of the parties, and that the note would be payable when the lease expired, though the language of the note is that the lease is to be *given up.* From the nature of the contract and the facts shown on trial, it is manifest that the parties contemplated that this condition was one to be complied with in some reasonable time, and that if the lease was one that was to run for a long period of time, or for any considerable time, to hold that the time of the expiration of the lease was the time when the note was to become payable, would not only be a violation of the spirit and intent of the contract, but of its terms also.

Nothing appears upon the note or by the proof, that the payee of the note had any right to terminate the lease, or that he had by contract or otherwise obtained any right or power to do so, but that it rested wholly in the option of the person holding the lease whether it should be given up or not:

There being nothing shown in the case that the note would become payable by reason of the lease expiring, nor that the payee ever had the power to give it up if he would, we think the note can not be regarded as a negotiable note, because not payable absolutely.

The principle governing this class of cases is established beyond doubt, and though the books of reports are full of cases on the subject, the controversy in all of them is as to the construc-

tion in each case, whether the note was really payable absolutely or not. The cases are too numerous to be referred to by name, but they will generally be found collected or cited in Story on Promissory Notes, secs. 22, 23, 24 and 25, and notes; Chitty on Bills, 136 and 527, and notes; 1 Am. Lead. Cases, notes to *Overton* v. *Tyler et al.*

The cases cited by the plaintiff's counsel on this point we think do not sustain the ground taken. In *Cota* v. *Buck*, 7 Metcalf 588, the court held that the note by its terms was payable absolutely the " *coming season*," and sooner if the amount could be realized by the sale of the property named in the note. In *Pinkham* v. *Macy*, 9 Met. 174, the note was payable " at the termination of the ship Obed Mitchell's present voyage," and was sued by an indorsee. But the only question made in the case was as to the sufficiency of the notice to charge the indorsee, and the subject of any contingency in the note is not alluded to by court or counsel. In *Stevens* v. *Blunt*, 7 Mass. 240, the note was payable " by the 20th of May, or when he completed the building according to contract," and the court held this to be a note payable absolutely on the 20th of May, and not upon any contingency.

It is not claimed that, if this note when given was contingent, so as not to be negotiable, it would become so by the happening of the event on which its payment depended. See Story on Notes, sec. 22, cited above. The cases of *Arlington* v. *Hinds*, 1 D. Chip. R. 431, and *Rut. and Bur. R. R. Co.* v. *Cole*, 24 Vt. 33, only decide, that when it appears on the face of the note that the payee is an agent, merely, that the suit may be brought by the principal, but it was never supposed that a party for whose benefit a note was in fact given could sue upon it as payable to himself, when by its terms it was made payable to another. But the plaintiff claims that if this note was payable upon a contingency, so as not to be a negotiable note within the law merchant, still as the contingency had happened, and the note had become absolute before this action was commenced, and the plaintiff was the actual holder and owner of it, that he can maintain the action in his own name.

This is claimed, in the first place, upon the ground that the plaintiff stands in the relation of a *payee* in the note, and that

the promise was made in terms to him, when he became the bearer, and the language and reasoning of HUTCHINSON, J., in *Matthews* v. *Hall*, 1 Vt. 316, is relied on to support this view, and if carried out to the fullest extent, would seem to sustain it. But the question before the court in that case was whether a note payable in money, and absolutely, to A. B. or bearer, could be sued by a holder to whom it had been transferred by mere delivery and without indorsement, the whole discussion is in reference to such a note, and nothing is said as to the subject of a note, payable on a contingency or not payable in money. But in the case of *Collins* v. *Lincoln*, 11 Vt. 268, the suit was upon a note payable to G. Johnson or bearer in *current bills*, in one year from its date. It was decided that such a note was not negotiable. The case states, to be sure, that the plaintiff sued as *indorsers* and the plaintiff insists that it was for that reason the court held the action could not be maintained. But no mention is made of this fact by the court, and the whole case and judgment go upon the footing that the note was not negotiable, and could only be sued in the name of the payee. So in *Sanford* v. *Huxley*, 18 Vt. 170, it is said by ROYCE, J., in delivering the judgment of the court, that a note payable in specific articles to A. B., *or bearer*, must be sued in the name of the payee; and that the legal interest can not be transferred to another so that he can maintain the action in his own name.

In *Coolidge* v. *Ruggles*, 15 Mass. 387, an action was brought upon a note, as follows: " For value received I promise to pay the bearer hereof, six months after date, nine hundred and eighty dollars, provided the ship Mary arrives at a European port of discharge, free from capture and condemnation by the British," and dated October 1, 1812. The plaintiff proved that this note or promise was made to one W. S. Skinner; that Skinner sold and delivered it to the plaintiff, and that the ship Mary arrived safely, so that the condition in the note was satisfied. The court held the note not negotiable, and decided that the plaintiff could not recover upon it, though payable to the bearer alone, and the court say " a note or bill payable to bearer stands on the same ground as a note payable to order, the only difference is in the mode of transfer."

15

It is insisted further by the plaintiff, if he is not to be considered as entitled to sue upon this note in the character of payee, but only in that of a *transferee*, that in this State, notes not negotiable by the law merchant, because not payable in money, or absolutely, but yet containing the ordinary words of trans- fer, *to order* or *bearer*, ought to be held negotiable, in order to carry out the principle of recognition of these instruments as prom- issory notes, which has been adopted in many respects as to them.

It is true, that for many purposes, these instruments have been regarded by the courts in this State, from a very early period as promissory notes. They have been allowed to be declared on in the ordinary form of declaring on notes; they have been held to import a consideration; it has been held that they may be indorsed, and that the liability of the indorser is the same, as upon a negotiable note; they have been held recoverable under the money counts, when due and unpaid, and perhaps in some other particulars they have been held to have the same legal proper- ties as negotiable notes. But they have never, so far as we know, been held to be negotiable, but on the contrary, in every decision that bears upon the subject, within our knowledge, the attribute of negotiability has been denied to them, so far as to enable a suit to be brought upon them by any but the payee. This has not only been the doctrine of the courts, but the under- standing of the whole profession, and of the business and mer- cantile community, and we regard it as the settled law of the State. It is very possible that our law would be more har- monious if such notes could be legally transferred, so that the holder could sue in his own name, and perhaps no evil con- sequences would arise therefrom, but we think nothing short of legislative action can make such the law.

The plaintiff insists too, that he can recover upon the princi- ple decided in *Moore* v. *Wright*, 1 Vt. 57; *Bucklin* v. *Ward*, 7 Vt. 195, and *Hodges* v. *Eastman*, 12 Vt. 358, in all of which it was held that if the maker of a note expressly promise to pay his note to the holder, the holder might sue on such promise in his own name, though he could not sue on the note by reason of its not being negotiable, or not being legally transferred to him.

But the plaintiff fails to bring his case within these decisions, because it shows no promise by the defendant to pay the note to the plaintiff; it only appears that he had notice that the plaintiff held his note, and this has never been held sufficient, but the promise must be express. Notice merely would protect the plaintiff's equitable interest in the note, but would not enable him to sue it in his own name. We are therefore of opinion, that upon none of the grounds assumed by the plaintiff can he recover in this suit, and that the judgment below for the defendant must be affirmed.